UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────

| | |
|---|---|
| *In re Syngenta AG MIR162 Corn Litigation*, (D. Kan. No. 2:14-md-02591-JWL-JPO); *DeLong Co., Inc. v. Syngenta AG*, (D. Kan. No. 2:17-cv-02614-JWL-JPO) | File No. 20-mc-064 (ECT/ECW) |
| Randal Giroux, Movant, v. Syngenta AG; Syngenta Biotechnology, Inc.; Syngenta Corporation; Syngenta Crop Protection AG; Syngenta Crop Protection, LLC; Syngenta Seeds, LLC, Defendants. | **OPINION AND ORDER** |

───────────────────────────────────────────────

Kathryn N. Hibbard, Robert J. Gilbertson, and X. Kevin Zhao, Greene Espel PLLP, Minneapolis, MN, for Nonparty Movant Randal Giroux.

David I. Horowitz, Kirkland & Ellis LLP, Los Angeles, CA, Edwin U., Kirkland & Ellis LLP, Washington, D.C., Steven L. Schleicher and Erica Holzer, Maslon LLP, Minneapolis, MN, for Defendants.

───────────────────────────────────────────────

This subpoena-enforcement matter arises from a complex multidistrict litigation ("MDL") consolidated in the United States District Court for the District of Kansas. Syngenta[1]—the defendant there—served a subpoena for deposition on nonparty Randal Giroux after an MDL plaintiff designated him as a non-retained expert witness. The MDL plaintiff, The DeLong Company, Inc., seeks to introduce Giroux's earlier deposition

---

[1] Defendants will be referred to collectively as "Syngenta."

testimony to support its case. Giroux, a Minnesota resident, has filed a motion to quash the subpoena. Syngenta opposes Giroux's motion to quash and has moved to transfer this dispute to the District of Kansas for a decision by one of the assigned MDL judges. Because exceptional circumstances warrant transferring Giroux's motion to quash to the MDL Court, Syngenta's transfer motion will be granted, and a decision on Giroux's motion to quash left for the MDL Court.

I

Giroux is the "Vice President – Global Regulatory Leader at Cargill, Incorporated," where he has worked for twenty years. Giroux Decl. ¶ 1 [ECF No. 4]. His connection to Cargill explains his involvement in this matter. In 2014, Cargill sued Syngenta, alleging it had harmed the American agricultural market by prematurely commercializing a type of genetically modified corn seed before it was approved for import by China (a major export market). *See Cargill, Inc. v. Syngenta, AG*, No. 67061 (Louisiana's 40th Jud. Dist. Ct., Parish of St. John the Baptist); Hibbard Decl. ¶ 2 [ECF No. 5]. Thousands of similar lawsuits were brought in federal and state courts throughout the country. The Judicial Panel on Multidistrict Litigation ordered the transfer and consolidation of all related federal cases in the District of Kansas, now pending before District Judge John W. Lungstrum and Magistrate Judge James P. O'Hara. *See In re: Syngenta AG MIR162 Corn Litig.*, MDL No. 2591, 65 F. Supp. 3d 1401 (J.P.M.L. Dec. 11, 2014). The MDL now includes hundreds of lawsuits filed against Syngenta by corn farmers and others in the American corn industry. *See In re: Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.). Like Cargill, MDL plaintiffs typically "allege that genetically-modified corn was

commingled in the United States corn supply, that China rejected imports of all corn from the United States because of the presence of the trait, and that such rejection caused corn prices to drop in the United States." Hibbard Decl. Ex. 9 ("DeLong Disc. Order") at 1–2 [ECF No. 5-1 at 83–84].

Given the large number of similar state-court cases, the MDL Court issued an order granting state courts the option to coordinate discovery with the MDL. *See* Horowitz Decl. Ex. Q ("Coordination Order") [ECF No. 15-1 at 162–81]. Among the state actions adopting the Coordination Order was Cargill's lawsuit in Louisiana state court. Hibbard Decl. Ex. 1 [ECF No. 5-1 at 2]. Throughout discovery in Cargill's lawsuit, the MDL, and litigation in the other coordinated proceedings, Giroux has testified six times in various capacities:

> (1) May 2016: Giroux was deposed as Cargill's corporate representative in a deposition taken pursuant to Section B.4 of the Coordination Order in the MDL and coordinated proceedings.
>
> (2) June 2016: Giroux was deposed in his individual capacity as a fact witness in a deposition taken pursuant to Section B.4 of the Coordination Order in the MDL and coordinated proceedings in Minnesota state court.
>
> (3) November 2016: Giroux was deposed as an expert for the bellwether plaintiffs in the MDL and coordinated proceedings in Minnesota state court.
>
> (4) June 2017: Giroux testified during an MDL bellwether trial.
>
> (5) September 2017: Giroux testified during a coordinated class-action trial in Minnesota state court.

> (6) December 2017: Giroux was deposed about his opinions in his capacity as an expert for Cargill in its pending lawsuit in Louisiana state court.

Giroux Decl. ¶ 2; Hibbard Decl. ¶ 5; Giroux Br. at 4 [ECF No. 3 at 9].

On July 17, 2020, MDL plaintiff DeLong served Syngenta with a Rule 26(a)(2) disclosure. Hibbard Decl. Ex. 5 ("Expert Disclosure") [ECF No. 5-1 at 41–46]; *see also DeLong Co., Inc. v. Syngenta AG*, 2:17-cv-02614-JWL-JPO (D. Kan.). In the disclosure, DeLong designated Giroux as an expert under Federal Rule of Evidence 702 and stated its intention to offer at trial his "prior trial testimony in the Kansas farmer class trial, and potentially his trial testimony in the coordinated action pending in the state district court of Hennepin County, Minnesota." Expert Disclosure at 2. Further, DeLong reserved the right to "rely on all other reports" issued by Giroux in relation to the MDL and to "use at trial [his] other deposition or trial testimony in the MDL, or in the referenced, coordinated proceeding." *Id.* at 3. In response, Syngenta emailed DeLong to arrange a deposition for Giroux. Horowitz Decl. Ex. G [ECF No. 15-1 at 77]. But DeLong was not interested. DeLong had neither retained nor specially employed Giroux to provide expert testimony under Federal Rule of Civil Procedure 26(a)(2)(B); nor had Giroux otherwise consented or agreed to provide new testimony. Giroux Decl. ¶¶ 3–5; Horowitz Decl. Ex. H [ECF No. 15-1 at 81]. And according to DeLong, a deposition was unnecessary anyway, because Giroux had already been deposed and cross-examined on his opinions in the earlier lawsuits. Horowitz Decl. Ex. G [ECF No. 15-1 at 73, 76]. Regardless, said DeLong, because it had not retained Giroux as an expert, it did not have authority to procure his

attendance for a deposition. Hibbard Decl. Ex. 4 [ECF No. 5-1 at 38]. Syngenta took issue with this. According to Syngenta, if Giroux's years-old expert testimony from another case was to be offered at trial, Syngenta should first have the opportunity to depose him about the application of those opinions to the DeLong case. Horowitz Decl. Ex. G [ECF No. 15-1 at 75].

On August 8, 2020, Syngenta emailed Cargill's counsel a subpoena for deposition that it intended to serve on Giroux. Hubbard Decl. Ex. 4 [ECF. No. 5-1 at 39]. Upon learning that Giroux would move to quash the subpoena, however, Syngenta elected to withdraw it. *Id.* at 35–38. Syngenta then filed a motion with the MDL Court. The motion requested an order either requiring DeLong to procure Giroux's deposition or striking Giroux's testimony and precluding DeLong from relying on him as an expert at trial. Horowitz Decl. Ex. J ("Mot. to Compel") at 1–2 [ECF No. 15-1 at 97–98]. In its motion, Syngenta stressed that the Coordination Order did not permit the use of deposition testimony from other coordinated proceedings save for impeachment, *id.* at 6; that, as an exporter of distiller's dried grains with solubles, DeLong's damages claims differed from those of earlier plaintiffs and were not considered by Giroux's risk analyses, *id.* at 7; and that Syngenta should be permitted to test Giroux's years-old opinions in light of intervening world events, *id.*[2] DeLong opposed the motion.

---

[2] Syngenta cited a "stunning revision" of China's corn production, China's failure to approve a single new biotech event between July 2017 and January 2019, and the U.S.-China trade war. *Id.*

5

Magistrate Judge O'Hara denied Syngenta's motion. DeLong Disc. Order at 7. While observing "there is no doubt Syngenta may depose [Giroux]" under Rule 26, the Court was "not persuaded that DeLong, as the designating party, ha[d] an obligation to produce Mr. Giroux for a deposition." *Id.* at 4. Afterall, Giroux is neither a party nor under any party's control in that litigation. *Id.* Thus, Magistrate Judge O'Hara reasoned, if Giroux was unwilling to sit for a deposition, Syngenta was required to issue a subpoena in accordance with Federal Rule of Civil Procedure 45, which provides a nonparty the opportunity to be heard, including by filing a motion to quash or modify the subpoena. *Id.* at 4–5. Magistrate Judge O'Hara extended the discovery deadline so that Syngenta could serve Giroux with a subpoena under Rule 45. If Syngenta elected to do so, it was instructed to "immediately inform the assigned Minnesota judge that [Magistrate Judge O'Hara was] amenable to accepting transfer of the motion under Rule 45(f)."[3] *Id.* at 6. Enter the present dispute.

On September 4, 2020, Syngenta served a new subpoena on Giroux, again seeking to depose him via live video feed in Minneapolis. Horowitz Decl. Ex. L [ECF No. 15-1 at 134–37]. Giroux then filed the present motion to quash the subpoena. ECF No. 1. Giroux argues that Syngenta's subpoena aims to impermissibly "force him to provide unwilling expert testimony," and that the subpoena imposes an undue burden under Federal Rule of Civil Procedure 45(d)(3)(A)(iv). Giroux Br. at 7–22 [ECF No. 3 at 12–27]. Syngenta filed

---

[3] Magistrate Judge O'Hara also denied the motion as premature to the extent it sought to exclude Giroux's testimony at trial. *Id.* at 6.

6

a brief in opposition, ECF No. 14, and moved to transfer Giroux's motion to quash subpoena to the MDL court in the District of Kansas, ECF No. 13.

II

Third-party subpoenas and disputes related to those subpoenas are governed by Federal Rule of Civil Procedure 45. Initially, "[a] subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). If the compliance court did not issue the subpoena, "it may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Absent consent, the transfer proponent bears the burden of demonstrating that exceptional circumstances are present. Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Giroux does not consent. He staunchly opposes transfer of his motion to the District of Kansas. Giroux Reply Br. at 1–3 [ECF No. 27 at 3–5]. Syngenta therefore must demonstrate that exceptional circumstances warrant transfer.

Rule 45 does not define exceptional circumstances, and instructive Eighth Circuit authority has not been cited or found. The Advisory Committee's note to the 2013 amendment provides helpful guidance. It states in relevant part:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests

> outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. To evaluate whether exceptional circumstances are present in any given case, one court has aptly identified three "overarching questions" to guide the inquiry:

> (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred;
>
> (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and
>
> (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel.

*In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 376 (D.D.C. 2017). These three considerations will be applied here.

### A

The first question is whether resolution of the subpoena dispute by this court risks disrupting the underlying MDL litigation in the District of Kansas (and, for that matter, that Court's management of discovery proceedings for coordinated state-court actions across the country). This dispute does not arise from a run-of-the-mill lawsuit, but an exceptional one. The DeLong case is part of a complex, years-long MDL action comprised of hundreds of federal lawsuits. The assigned MDL judges are tasked with globally

managing discovery for thousands of related state court actions. It seems implausible that this court could identify and give proper weight to the implications Giroux's motion may have on the MDL Court's management of its cases. This fact alone arguably is enough to justify transfer. *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 378 ("[T]he MDL status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in favor of transfer to the Issuing Court under Rule 45(f), because the same concerns about orderliness and disruption that led to the consolidation of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation."). Transfer to the MDL Court "may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes." *In re Niaspan Antitrust Litig.*, Civ. No. JKB-15-1208, 2015 WL 3407543, at *1 (D. Md. May 26, 2015); *see Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 1:17–MC–0055–LY–AWA, 2017 WL 1611915, at *2 (W.D. Tex. Apr. 27, 2017) (observing that "[u]niformity of discovery rulings" in complex multidistrict litigation is "critical to achieving fairness to the parties and non-parties").

If that weren't enough, there are potential issues this court can identify. One example of disruption contemplated by the Advisory Committee is where an issuing court "has already ruled on issues presented by the motion[.]" Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. On this point, Syngenta cites the MDL Court's past rulings on motions involving Giroux. Syngenta Br. at 21–22 [ECF No. 14 at 25–26]. Indeed, in 2016, Syngenta and a group of MDL plaintiffs were embroiled in a similar discovery dispute. Magistrate Judge O'Hara was asked "to decide whether Randall Giroux

9

. . . should sit for a third deposition now that plaintiffs have designated him a non-retained expert under Fed. R. Civ. P. 26(a)(2)(C)." Horowitz Decl. Ex. R at 1 [ECF No. 15-1 at 183]. There, as Giroux argues here, plaintiffs asserted that Giroux's deposition would be unreasonably cumulative, that the subject matter of the proffered testimony had already been covered in earlier depositions, and that Syngenta had therefore had "ample opportunity" to question Giroux about these topics. *Compare id.* at 2–3, *with* Giroux Br. at 1–2, 11, 14, 16–19, *and* Giroux Reply Br. at 11, 14–15. The MDL Court granted Syngenta leave to take Giroux's deposition. Horowitz Decl. Ex. R. at 3 [ECF No. 15-1 at 185]. Thus, the MDL court has ruled on at least some issues presented by Giroux's motion to quash.

Further, disruption may also occur where "the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Here, ruling on Giroux's motion may require the court to interpret the Coordination Order—implemented to ensure uniformity and efficiency of discovery for thousands of related cases. Giroux, for instance, maintains that, under the Coordination Order, any deposition ordered in DeLong's case may not be used other than for impeachment purposes in Cargill's Louisiana case. And he asks this court to enter a protective order prohibiting its use for *any* purpose if the motion to quash is denied. Giroux Br. at 21–22; Giroux Reply Br. at 15–16; *see* Coordination Order at 9–10. Syngenta lodged a related argument regarding the use of Giroux's prior deposition testimony in the DeLong action in its earlier motion before the MDL Court—an argument that was rejected as premature. DeLong Disc. Order at 6. It is possible that Syngenta will renew its motion to

exclude Giroux's expert testimony, in which case it will likely renew this very argument. Other parties, in other related cases, could also be impacted by this court's ruling. Thus, resolving Giroux's motion to quash poses a substantial risk of disrupting the issuing Court's management of the MDL and coordinated proceedings.

Further, a ruling on Giroux's motion could disrupt the MDL Court's management of the DeLong case itself, where discovery has all but concluded and trial is approaching. *See* DeLong Disc. Order at 6; *see Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43–44 (D.D.C. 2015) (finding exceptional circumstances due to "short discovery window and complexity of the issues raised"); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 11–13 (D.D.C. 2014) (finding exceptional circumstances where issuing court had "already supervised substantial discovery and begun preparations for trial"). Fact discovery has closed, and the deadline for all dispositive motions and motions to exclude expert testimony has been set for October 23, 2020. *DeLong Co., Inc. v. Syngenta AG*, 2:17-cv-02614-JWL-JPO (D. Kan.), ECF No. 73. Were this court to decide the motion to quash, the MDL Court's options may be narrowed in certain respects. Take the admissibility of Giroux's prior testimony. Perhaps the MDL Court will prefer to admit Giroux's deposition testimony, and to deny any motion by Syngenta to exclude it. If this court grants Giroux's motion to quash, Syngenta will not have had the opportunity to cross-examine Giroux on his opinions in relation to DeLong. Perhaps, then, the MDL Court would be inclined to exclude Giroux's testimony. *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial."). Or, as Giroux and DeLong have argued, maybe the MDL Court would

11

find that Syngenta's past opportunities to depose Giroux were sufficient nonetheless. The bottom line is that the decision on Giroux's motion to quash is bound up with decisions better left for the MDL Court—particularly given the late stage of those proceedings.

B

Second, the court should also ask whether the MDL Court is in a better position to rule on Giroux's motion. As a starting point, we "should not . . . assume[]" that it is. Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. But the duration and complexity of the underlying MDL are factors that may place the issuing court in a superior position. *Bell v. ATH Holding Co.*, Misc. Action No. 18-148, 2018 WL 3429710, at *7 (E.D. Pa. July 16, 2018); *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015); *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Here, the underlying MDL is complex. For nearly six years the District of Kansas has overseen hundreds of consolidated federal actions, as well as discovery for thousands of coordinated state actions, in which different types of plaintiffs have sued various related Syngenta entities. *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177 (D. Kan. 2015). The issues involved are complex and too numerous to recite here. *See id.* In his papers, even Giroux recognizes Magistrate Judge O'Hara's deep familiarity with these issues. Giroux Br. at 28 n.16; Giroux Reply Br. at 8 n.3. That familiarity would benefit the parties in resolving this dispute. For instance, the parties contest the propriety of Syngenta's subpoena. Giroux contends a deposition is needlessly cumulative; Syngenta maintains that it is necessary to assess how Giroux's years-old opinions fit DeLong's case and how his opinions have aged in light of intervening world events. *See* Giroux. Br. at

19–20; Giroux Reply Br. at 14–15; Syngenta Br. at 9, 11–15. The parties thus invite this court to wade into an extensive MDL litigation history to assess the relevance and cumulativeness of additional testimony. To be sure, these are factors properly considered in determining substantial need and undue hardship under Rule 45(d)(3)(C)(i). But the MDL Court is better suited to balance relevance and necessity of discovery against the need to protect Giroux, while at the same time giving due consideration to the years of discovery it has overseen under the Coordination Order. *See In re Braden*, 344 F. Supp. 3d 82, 93, 96 (D.D.C. 2018) (transferring motion to compel where resolution required court to evaluate relevance of documents sought); *Mueting, Raasch, & Gebhardt, P.A. v. PPG Indus., Inc.*, 18-mc-62 (JNE/TNL), 2018 WL 3971945, at *2 (D. Minn. Aug. 20, 2018) (recipients' arguments that discovery sought was "irrelevant, cumulative, and burdensome" weighed in favor of transfer because issuing court was better positioned to assess discovery needs); *Rushing v. Williams-Sonoma, Inc.*, Nos. 5:18-cv-411-KKC, 5:18-cv-420-KKC, 2018 WL 3435354, at *2 (E.D. Ky. July 17, 2018); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 381–82 (finding that presiding judges were better positioned to evaluate the relevance of discovery related to complex claims in MDL); *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47–48 (D.D.C. 2016) (finding that the issuing court, already immersed in discovery, could better scrutinize argument that discovery was irrelevant and duplicative); *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C. 2014) (explaining that issuing court had presided for four years and was better positioned to judge relevance and necessity of discovery sought). And on cumulativeness, the MDL Court has already established its own standards for resolving allegations of duplicative discovery:

> For any discovery that is claimed already to have been obtained in another proceeding, giving rise to a discovery dispute, the parties in a Coordinated Action may only take such discovery upon leave of either the MDL Court or the Court in which the Coordinated Action is pending. Such leave shall be obtained on noticed motion for good cause shown, including why the discovery already obtained in the MDL Proceeding is not duplicative.

Coordination Order at 7. The MDL court is best positioned to construe and enforce its global discovery order.

Finally, Giroux also claims that Syngenta intends to use Giroux's deposition for an improper purpose, or that its subpoena is part of a pattern of abusive discovery. Giroux Br. at 17–20. Even these issues are better left for the Court that has overseen the litigation and supervised the parties' conduct. *Lipman v. Antoon*, 284 F. Supp. 3d 8, 14 (D.D.C. 2018); *Elliot v. Mission Tr. Servs., LLC*, No. A-14-CV-972-LY, 2014 WL 7157156, at *3 (W.D. Tex. Dec. 12, 2014) (party alleging that subpoena was part of pattern of abusive discovery weighed in favor of transfer, as trial judge would be better positioned to assess such a claim).

C

There is one remaining factor: the burden that transfer would place on Giroux, the local nonparty. This is the "prime concern" under Rule 45(f). Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Giroux discusses at length why *enforcing* the subpoena would impose an undue burden on him. *See* Giroux Br. at 13–22; Giroux Reply Br. at 10–15. But he does not attempt to explain why *transfer* of the subpoena dispute would be burdensome.

14

There are certain burdens and costs that will almost certainly result from transfer. One is the inevitable time and cost of additional litigation. Giroux will leave this District having not received closure on the subpoena dispute, and he will be forced to raise the same arguments in the District of Kansas. But that the issues will remain identical also lessons the burden of litigating them elsewhere. After all, "these motions are already fully briefed, making the burden light." *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 26 (D.D.C. 2018); *see also In re Braden*, 344 F. Supp. 3d at 92–93. It is true that Giroux and his counsel are here in Minnesota. But Judge Lungstrum and Magistrate Judge O'Hara have routinely held hearings in the MDL telephonically or by live video feed—no doubt with greater frequency during the COVID-19 pandemic—and it seems unreasonable to doubt their willingness to do so in this instance. *See, e.g.*, *DeLong Co., Inc. v. Syngenta AG*, 2:17-cv-02614-JWL-JPO (D. Kan.), ECF Nos. 70, 71; *In Re: Syngenta AG MIR 162 Corn Litig.*, 2:14-md-02591-JWL-JPO (D. Kan.), ECF Nos. 4338, 4404, 4415, 4418; *see also* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment ("If the motion is transferred, judges are encouraged to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties[.]"). Thus, it is doubtful that transfer will necessitate additional travel for Giroux or his counsel, significantly diminishing any resulting burden. *See Bell*, 2018 WL 3429710, at *5; *N. Atl. Operating Co., Inc. v. Dunhuang Grp.*, No. 18-mc-154-LPS, 2018 WL 3381300, at *2 (D. Del. July 11, 2018); *In re Subpoena of Autoliv ASP, Inc.*, Misc. Case No. 16-51669, 2016 WL 8201043, at *4 (E.D. Mich. Dec. 22, 2016). To summarize, Giroux's interest in local resolution of the

motion to quash is not substantial and does not override other considerations warranting transfer.[4]

\*

Rule 45 limits transfer to cases posing exceptional circumstances, and this is a textbook case. A decision here would very likely disrupt the assigned judges' management of the complex MDL underlying this dispute, and the burden Giroux will face litigating his motion to quash in the District of Kansas is insubstantial, whether viewed alone or in comparison to the risk of disruption.[5]

---

[4] It's worth mentioning that Cargill has devoted significant resources to, and has an interest in, its Louisiana case and the MDL and related litigation. Thus, while Cargill is not a party here or in *DeLong*, there is no doubt it is an interested party for purposes of this dispute. Giroux acknowledges as much when he requests a protective order preventing his deposition testimony, if allowed, from being used in Cargill's Louisiana case. Giroux Br. at 21–22; Giroux Reply Br. at 15–16.

[5] Syngenta argues that 28 U.S.C. § 1407 permits an MDL court to hear a subpoena dispute notwithstanding the procedural limitations of Rule 45. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 2926581, at \*3 (D. Kan. June 11, 2018). Section 1407(b) provides that "coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom [an MDL is] assigned" and permits "[t]he judge or judges to . . . exercise the powers of a district judge in *any district* for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." (Emphasis added). In view of the disposition of the transfer motion under Rule 45(f), this argument need not be addressed.

# ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1. Syngenta's Motion to Transfer [ECF No. 13] the motion to quash subpoena is **GRANTED**.

2. Randal Giroux's Motion to Quash Subpoena [ECF No. 1] will be **TRANSFERRED** to the United States District Court for the District of Kansas. The Clerk of Court is directed to transfer this case forthwith.

Dated:  October 9, 2020                     s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court